577 S.E.2d 505

Tarik H. HUDGINS

v.

COMMONWEALTH of Virginia.

Record No. 0078–02–1.

Court of Appeals of Virginia,
Chesapeake.

March 4, 2003.

2

James L. Grandfield, Assistant Public Defender, for appellant.

Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore, Attorney General, on brief), for appellee.

Present: BENTON, ELDER, JJ., and COLEMAN, Senior Judge.

ELDER, Judge.

Tarik H. Hudgins (appellant) appeals from his bench trial conviction for grand larceny from the person in violation of Code § 18.2–95(i). On appeal, he contends the trial court erroneously ruled that his trial and conviction for grand larceny from the person did not violate double jeopardy principles in light of his previous acquittal on an indictment for robbery arising out of the same theft. Because appellant's acquittal on the robbery indictment acted as an acquittal on the lesser-included offense of petit larceny, we hold that the collateral estoppel protections of the Double Jeopardy Clause barred the Commonwealth's subsequent attempt to convict appellant for the grand larceny of that same bicycle from the person of the victim. Thus, we reverse and dismiss.

4

## I.

## BACKGROUND

On October 1, 2000, appellant pushed an eleven-year-old boy (the victim) from his bicycle and took the bicycle from him.

On February 28, 2001, the grand jury issued an indictment charging that, "On or about Sunday, October 1, 2000," appellant "did rob [the victim] of U.S. Currency or other personal property, in violation of Code § 18.2–58." In a bench trial on March 16, 2001, appellant was tried on the robbery indictment and found not guilty. Before acquitting appellant of robbery, the trial court indicated its belief that the evidence was sufficient to support a conviction for larceny from the person but that it could not convict appellant of larceny from the person on an indictment for robbery because larceny from the person was not a lesser-included offense of robbery.

On March 26, 2001, the grand jury issued a different indictment alleging that "On or about Sunday, October 1, 2000," appellant "did steal property having a value of five dollars ($5) or more from the person of [the victim], in violation of Code § 18.2–95."

Appellant moved to dismiss on grounds of former jeopardy. In a memorandum in support of that motion, he conceded the general principle that larceny from the person is not lesser included in the offense of robbery. However, he argued that the Commonwealth impermissibly relied on the same theft to support the second indictment that it had to support the first indictment, on which he was acquitted. The Commonwealth conceded in the trial court that "the 'same conduct' by [appellant] resulted in the two indictments, one for Robbery, and one for Grand Larceny from the Person."

Relying on *Graves v. Commonwealth*, 21 Va.App. 161, 462 S.E.2d 902 (1995), *aff'd on reh'g en banc*, 22 Va.App. 262, 468 S.E.2d 710 (1996), the trial court denied the motion, holding that "while the act alleged—the theft of a bicycle—may be the same, robbery and larceny from the person are not identical offenses."

After hearing evidence on the grand larceny indictment, the trial court convicted appellant, and he noted this appeal.

## II.

## ANALYSIS

Double jeopardy principles "protect[ ] against prosecution for the same offense after either an acquittal or a conviction of that offense and against multiple punishments for that same offense." *Coleman v. Commonwealth*, 261 Va. 196, 199, 539 S.E.2d 732, 733–34 (2001). Under a "same elements" test, sometimes referred to as the *Blockburger* test, *see Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) (holding that to determine whether single act constitutes one offense or two, court must examine "whether each provision requires proof of a fact which the other does not"); *see also Brown v. Ohio*, 432 U.S. 161, 168–69, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977) (holding that "[t]he greater offense is . . . by definition the 'same' for purposes of double jeopardy as any lesser offense included in it" and, thus, that conviction for lesser offense prevented subsequent conviction for greater offense), former jeopardy applies to prevent prosecution under multiple indictments (1) when the two offenses are identical; (2) when the former offense is lesser-included in the subsequent offense; and (3) when the subsequent offense is lesser-included in the former offense. *Jones v. Commonwealth*, 218 Va. 757, 759, 240 S.E.2d 658, 660 (1978). "The elements of the crimes, their 'fundamental nature,' are determinative, not 'the particular facts of a specific case. . . .' " *Crump v. Commonwealth*, 13 Va.App. 286, 290, 411 S.E.2d 238, 241 (1991) (quoting *Taylor v. Commonwealth*, 11 Va.App. 649, 652, 400 S.E.2d 794, 795 (1991)), *quoted with approval in Graves*, 21 Va.App. at 164–65, 462 S.E.2d at 903–04.

Although the United States Supreme Court has abandoned the "same conduct" test of *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled in United States v. Dixon*, 509 U.S. 688, 703–12, 113 S.Ct. 2849, 2859–64, 125

L.Ed.2d 556 (1993), it continues to acknowledge that collateral estoppel is a component of the Fifth Amendment's protections against double jeopardy, *Dixon*, 509 U.S. at 691, 704–05, 113 S.Ct. at 2853, 2860. "For whatever else [the Fifth Amendment guarantee against double jeopardy] may embrace, it surely protects a man who has been acquitted from having to 'run the gantlet' a second time." *Ashe v. Swenson*, 397 U.S. 436, 445–46, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970) (citation omitted).

 Collateral estoppel "may bar a later prosecution for a separate offense where the Government has lost an earlier prosecution involving the same facts." *Dixon*, 509 U.S. at 705, 113 S.Ct. at 2860.

> [W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. Although first developed in civil litigation, collateral estoppel has been an established rule of federal criminal law ... [for] more than 50 years....
>
> [T]he rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational [trier of fact] could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon v. United States*, 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180, 184. Any test more technically restrictive would, of course, amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in

every case where the first judgment was based on a general verdict of acquittal.

*Ashe,* 397 U.S. at 443–44, 90 S.Ct. at 1194 (footnote omitted).

On appeal, appellant contends that the offense of grand larceny from the person was lesser included in the offense of robbery under the facts of this case. Based on the holding in *Graves,* we disagree.

*Graves* involved a robbery indictment which "contained no allegation of the value of the property stolen and no allegation that the property was taken from [the victim's] person." 21 Va.App. at 164, 462 S.E.2d at 903. Under those circumstances, we held that "the [robbery] indictment, on its face, failed to specify an accusation of grand larceny from the person." *Id.* As a result, we concluded, "grand larceny from the person was not a lesser offense included within the robbery specification of the indictment." *Id.* at 166, 462 S.E.2d at 904.

Although *Graves* involved the trial court's authority to convict the defendant for grand larceny from the person on an indictment charging robbery arising out the same facts, we believe its holding is equally applicable here. Here, as in *Graves,* the first indictment, the robbery indictment, "contained no allegation of the value of the property stolen and no allegation that the property was taken from [the victim's] person." *Id.* at 164, 462 S.E.2d at 903. The second indictment, as required to charge grand larceny of the person, alleged that the value of the property stolen was five dollars or more and that the property was taken "from the person of [the victim]." Thus, here, as in *Graves,* the offense of grand larceny from the person was not lesser included in the offense of robbery. That appellant's case involved successive indictments while *Graves* involved a single indictment is not dispositive.

Nevertheless, we conclude appellant's conviction for grand larceny from the person is barred by collateral estoppel. Although appellant did not denominate it as such at trial or on appeal, a careful review of his argument at both stages

indicates his contention that the collateral estoppel component of the Double Jeopardy Clause barred his prosecution on the second indictment.

As outlined above, collateral estoppel applies both civilly and criminally to prevent relitigation, in a future lawsuit between the same parties, of "an issue of ultimate fact [that] has once been determined by a valid and final judgment." *Ashe*, 397 U.S. at 443, 90 S.Ct. at 1194. Collateral estoppel applies "when the prior acquittal necessarily resolved the issue now in litigation." *Simon v. Commonwealth*, 220 Va. 412, 418, 258 S.E.2d 567, 571 (1979). "The doctrine . . . does not apply if it appears that the prior judgment could have been grounded 'upon an issue other than that which the defendant seeks to foreclose from consideration.'" *Lee v. Commonwealth*, 219 Va. 1108, 1111, 254 S.E.2d 126, 127 (1979) (quoting *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194). "The party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he now seeks to preclude." *Rogers v. Commonwealth*, 5 Va.App. 337, 341, 362 S.E.2d 752, 754 (1987).

Here, the evidence established that appellant previously had been acquitted of robbery of the victim's bicycle, and the Commonwealth conceded that the subsequent indictment for grand larceny from the person was based on appellant's alleged theft of the same bicycle from the same victim on the same occasion as charged in the first indictment. Under the indictment charging appellant with robbery, he was subject to conviction not only for that robbery but also for any lesser offenses necessarily included in it, including petit larceny of the same bicycle. *See, e.g., Harrell v. Commonwealth*, 11 Va.App. 1, 6, 396 S.E.2d 680, 682 (1990). Appellant's acquittal on the robbery charge in his circuit court bench trial, the only charge arising out of this incident then pending against him, constituted an acquittal for petit larceny of that bicycle. *See Myers v. Commonwealth*, 148 Va. 725, 729–30, 138 S.E. 483, 484 (1927) (stating principle that acquittal of greater offense constitutes acquittal of all lesser offenses and bars subsequent

prosecution of those lesser offenses). Under the facts of this case, appellant's acquittal, as a matter of law, operated as a finding that appellant did not commit petit larceny of the victim's bicycle. Appellant met his "burden of showing that the verdict in the prior action necessarily decided the precise issue he now seeks to preclude," *Rogers*, 5 Va.App. at 341, 362 S.E.2d at 754, and the Commonwealth and the court were bound by this finding in the second proceeding.

The trial court's statement in the first proceeding that it believed the evidence was insufficient to prove robbery but sufficient to prove larceny from the person does not support a different result. The trial court's apparent belief that the evidence was sufficient to prove petit larceny is insufficient to contravene its acquittal of appellant for petit larceny, by operation of law, as a lesser-included offense of the robbery for which appellant was acquitted. *Myers*, 148 Va. at 729–30, 138 S.E. at 484; *see McBride v. Commonwealth*, 24 Va.App. 30, 35, 480 S.E.2d 126, 128 (1997) (holding that "[a] court speaks through its orders and those orders are presumed to accurately reflect what transpired"); *see also Stamper v. Commonwealth*, 220 Va. 260, 280–81, 257 S.E.2d 808, 822 (1979) (noting that presumption ordinarily applies where order conflicts with transcript of related proceedings). When the trial court voiced its opinion that the evidence was insufficient to prove robbery but sufficient to prove larceny from the person, the Commonwealth should have asked the court to convict appellant of petit larceny in order to avoid the issue preclusion which bars appellant's conviction on the second indictment. *See Johnson v. Commonwealth*, 221 Va. 736, 743, 273 S.E.2d 784, 789 (1981) (citing *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), for the proposition that "a defendant is acquitted for double jeopardy purposes where the ruling of the trial judge represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offenses charged"). To hold otherwise would contravene the core protections of the Double Jeopardy Clause.

Finally, we conclude our holding in *Ramadan v. Commonwealth*, 28 Va.App. 708, 508 S.E.2d 357 (1998), also does not require a different result. *Ramadan* involved a district court proceeding in which the court acquitted the defendant of reckless driving and simultaneously certified to the grand jury a charge of feloniously driving a motor vehicle after having been adjudicated an habitual offender. *Id.* at 712, 508 S.E.2d at 359. Both acts arose out of the same conduct. *Id.* The felony charge required proof of " 'driving of itself' which 'endangers the life, limb, or property of another,' " *id.* at 713, 508 S.E.2d at 359 (quoting Code § 46.2-357(B)(2)), an act of driving which we noted was defined by " 'language virtually identical' " to the language defining the reckless driving offense dismissed by the district court, *id.* at 713 & n. 2, 359–60 & n. 2 (quoting *Bishop v. Commonwealth*, 20 Va.App. 206, 211, 455 S.E.2d 765, 767 (1995)).

Although we noted in *Ramadan* that "[a]n acquittal, 'standing alone, does not permit a conclusion with respect' to a court's findings or rationale," *id.* at 714, 508 S.E.2d at 360 (quoting *Copeland v. Commonwealth*, 13 Va.App. 450, 453, 412 S.E.2d 468, 470 (1991)), we did so in the context of courts not of record, noting "[g]eneral 'district courts frequently[, as here,] mark misdemeanor warrants, "dismissed" without assigning specific grounds,' acting, 'sometimes . . . not upon an adjudication of substantive issues, but upon some technical procedural defect or, indeed, upon nothing more than considerations of leniency,' " *id.* (quoting *Lee*, 219 Va. at 1111, 254 S.E.2d at 128). We noted as an additional example the case of *Clodfelter v. Commonwealth*, 218 Va. 98, 107–08, 235 S.E.2d 340, 345–46 (1977), in which the Court held the district court may have dismissed the misdemeanor on the belief that it was "subsumed in the . . . felony charge . . . certified to the grand jury." *Ramadan*, 28 Va.App. at 714, 508 S.E.2d at 360.

Thus, *Ramadan* involved the preclusive effect of a district court's misdemeanor acquittal on a related felony charge simultaneously certified by that court to the grand jury. Under those circumstances, we declined the defendant's invitation to hold the acquittal of the misdemeanor on unspecified

grounds compelled a finding that the evidence was insufficient to prove the certified felony offense.

In appellant's case, by contrast, the challenged proceedings were successive rather than concurrent and involved circuit court rather than district court proceedings. The trial court's acquittal of appellant in the first proceeding stood alone and constituted an acquittal of appellant for petit larceny as a matter of law. Although the basis for a court's decision is often hard to prove for the purpose of invoking collateral estoppel in a criminal trial, the United States Supreme Court noted in *Ashe* that a test which is too "technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based on a general verdict of acquittal." *Ashe*, 397 U.S. at 444, 90 S.Ct. at 1194.

For these reasons, we hold that the Commonwealth was collaterally estopped from attempting to prove in appellant's second prosecution the underlying petit larceny for which he was acquitted in the first prosecution. Thus, the trial court erroneously denied his motion to dismiss and erroneously convicted him of grand larceny from the person. Accordingly, we reverse and dismiss appellant's conviction.

*Reversed and dismissed.*

BENTON, J., concurring.

I join in the majority opinion. I write separately merely to add my view that the existence of successive indictments is also a significant fact in the double jeopardy analysis.

In the first trial, Tarik H. Hudgins was tried for robbery and acquitted after the presentation of evidence. The second indictment, which charged a larceny arising from the same incident, brought into focus traditional concerns about the protections afforded by the guarantees of the Double Jeopardy Clause.

"The development of the Double Jeopardy Clause from its common-law origins . . . suggests that it was directed at the threat of multiple prosecutions. . . ." Thus . . . the "control-

ling constitutional principle" focuses on prohibitions against multiple trials. At the heart of this policy is the concern that permitting the sovereign freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of oppression. The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to convict the accused, "thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." "[S]ociety's awareness of the heavy personal strain which a criminal trial represents for the individual defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its very vital interest in enforcement of criminal laws."

*United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568–69, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (citations omitted).

The record establishes that on February 28, 2001, a grand jury indicted Hudgins for robbing "Brinkley [on October 1, 2000] of . . . currency or other personal property." A judge tried Hudgins on that charge and acquitted him on March 16, 2001. Ten days later, the grand jury returned another indictment alleging that on "October 1, 2000, [Hudgins] did steal property having a value of five dollars . . . or more from the person of . . . Brinkley." Over Hudgins's objection, the same judge tried this second indictment and convicted him of this larceny offense. At this second trial, the judge found and the prosecutor agreed that the property at issue in both indictments was the same bicycle. Indeed, the Commonwealth on appeal concedes this to be the case. Hudgins contends, as he did at trial, that the prosecution under this second indictment violates constitutional guarantees against double jeopardy.

"It is well established that the Double Jeopardy Clause forbids the retrial of a defendant who has been *acquitted* of the crime charged." *Bullington v. Missouri*, 451 U.S. 430, 437, 101 S.Ct. 1852, 1857, 68 L.Ed.2d 270 (1981).

An acquittal is accorded special weight. "The constitutional protection against double jeopardy unequivocally prohibits a second trial following an acquittal," for the "public interest in the finality of criminal judgments is so strong that an acquitted defendant may not be retried even though 'the acquittal was based upon an egregiously erroneous foundation.' If the innocence of the accused has been confirmed by a final judgment, the Constitution conclusively presumes that a second trial would be unfair." *The law "attaches particular significance to an acquittal."*

*United States v. DiFrancesco*, 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (emphasis added, citations omitted). Put simply, "the Fifth Amendment guarantee against double jeopardy ... surely protects a man who has been acquitted from having to 'run the gantlet' a second time." *Ashe v. Swenson*, 397 U.S. 436, 445, 90 S.Ct. 1189, 1195, 25 L.Ed.2d 469 (1970).

When Hudgins was first tried and acquitted on March 16, 2001 of the charge of robbery involving the bicycle, that proceeding acted as an acquittal also of the lesser-included offense of larceny of the bicycle. "The greater offense is ... by definition 'the same' for purposes of double jeopardy as any lesser offense included in it." *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). Thus, just as an acquittal on a lesser-included offense bars a subsequent prosecution on the greater offense, an acquittal on a greater offense bars a subsequent prosecution on the lesser-included offense. *Id.* "[T]he sequence is immaterial.... Whatever the sequence may be, the Fifth Amendment forbids successive prosecution ... for a greater and lesser included offense." *Id.* at 168–69, 97 S.Ct. at 2227. In other words, whenever a prosecutor can request a lesser-included instruction, a blanket acquittal is an implicit acquittal on each lesser included offense; and a later trial on any lesser-included charge would put the accused twice in jeopardy for the offense. These principles are well established. *See Grafton v. United States*, 206 U.S. 333, 351, 27 S.Ct. 749, 753, 51 L.Ed. 1084 (1907).

The indictment the grand jury issued on March 26, 2001, ten days after Hudgins was acquitted of robbery, charged a larceny of the same bicycle that was involved in the robbery charge. When the trial judge acquitted Hudgins after trial on March 16, 2001 of the robbery charge, he did not convict Hudgins of the lesser offense of larceny. We do not know whether the prosecutor sought a larceny conviction in the first trial or, instead, decided to forego that option and to seek a second indictment, believing that *Graves v. Commonwealth,* 21 Va.App. 161, 462 S.E.2d 902 (1995), *aff'd on reh'g en banc,* 22 Va.App. 262, 468 S.E.2d 710 (1996), would permit that action.[1]

---

1. In *Graves,* a trial judge "struck the evidence as to [the] robbery . . . [indictment, and ruled] that grand larceny from the person is a lesser offense included within a charge of robbery and permitted the case to go forward on a charge of grand larceny from the person." 21 Va.App. at 163, 462 S.E.2d at 903. We reversed the conviction for grand larceny from the person and held as follows:

 Because the [robbery] indictment against Graves did not set forth allegations of value or of theft from the person, it did not charge grand larceny from the person. Therefore, grand larceny from the person was not a lesser offense included within the robbery specification of the indictment.

 *Id.* at 166, 462 S.E.2d at 904. *Graves* was not a double jeopardy case.

 In deciding *Graves,* we merely found "*guidance* in *Jones v. Commonwealth,* 218 Va. 757, 240 S.E.2d 658 (1978)." 21 Va.App. at 165, 462 S.E.2d at 904 (emphasis added). The defendant in *Jones* was "convict[ed] of grand larceny of an automobile following his conviction of robbery involving larceny of money." 218 Va. at 758, 240 S.E.2d at 659. Although the defendant in *Jones,* unlike in *Graves,* contended that his conviction for larceny was barred by the principle of double jeopardy, he did "not contend that the two crimes of which he was convicted [were] identical offenses." *Id.* at 759, 240 S.E.2d at 660. Indeed, the defendant "contend[ed] that the theft of the money underl[aid] the robbery conviction and the theft of the car underl[aid] the grand larceny conviction." *Id.* at 760, 240 S.E.2d at 661. Thus, the Supreme Court noted that "grand larceny of the car was not charged in the robbery indictment," *id.* at 760, 240 S.E.2d at 660–61, and noted further that "the two thefts involved two separate and distinct acts of caption and two different acts of asportation." *Id.* at 761, 240 S.E.2d at 661. Significantly, the Supreme Court held that because "theft is an essential component of robbery and charged as such in every robbery indictment . . . , a robbery indictment includes all elements of whatever larceny offense it charges, whether grand or petit, and the larceny offense charged is, therefore, lesser-included in robbery." *Id.* at 759–60, 240 S.E.2d at 660. Clearly, Hudgins's case arises in a different posture than *Graves* and raises a related but different issue than *Jones.*

Whatever the prosecutor's intention, the acquittal at the first trial necessarily acted as an acquittal of the larceny. As the Supreme Court noted in *Grafton*, when addressing an acquittal following a murder trial, " 'had the defendant been guilty, not of [the greater offense] but of [the lesser offense], he would have been found guilty of the latter offense upon that indictment.' " 206 U.S. at 351, 27 S.Ct. at 753 (citation omitted).

In that vein, the Supreme Court's observation in *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962), is pertinent to the acquittal that resulted from Hudgins's first trial.

> The petitioners were tried under a valid indictment in a ... court which had jurisdiction over them and over the subject matter. The trial did not terminate prior to the entry of judgment.... It terminated with the entry of a final judgement of acquittal.... The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, "[t]he verdict of acquittal was final, and could not be reviewed ... without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution."

*Id.* at 143, 82 S.Ct. at 672. (citations omitted). *See also Smalis v. Pennsylvania*, 476 U.S. 140, 144 n. 7, 106 S.Ct. 1745, 1748 n. 7, 90 L.Ed.2d 116 (1986) (noting that "[t]he fact that 'the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles' ... affects the accuracy of that determination but it does not alter its essential character"); *Arizona v. Rumsey*, 467 U.S. 203, 211, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (holding that although the trial judge "relied on a misconstruction of the statute ... [in making findings concerning the criminal offense, that] error of law ... does not change the double jeopardy effects of a judgment that amounts to an acquittal on the merits"); *Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (holding that "when a defendant has been acquitted at trial he may not be retried on the same offense, even if the legal rulings underlying the acquittal

were erroneous"); *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (holding that courts must "necessarily afford absolute finality to a jury's verdict of acquittal—no matter how erroneous its decision"). When, as in this case, "an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. Thus, the Commonwealth could not relitigate the ultimate facts resolved in the first trial in Hudgins's favor by the acquittal for robbery and necessarily for the larceny of the bicycle.

Unlike in *Jones v. Commonwealth,* 218 Va. 757, 240 S.E.2d 658 (1978), Hudgins alleges that the two indictments charged offenses involving a taking of the identical object. *Cf.* 218 Va. at 759, 240 S.E.2d at 660 (noting that the "[d]efendant does not contend that the two crimes of which he was convicted are identical offenses"). He contends that the same property was the subject of each indictment and that the same offense was the subject of both indictments. The Commonwealth agrees that the taking alleged in both indictments involved the same bicycle. This is precisely the circumstance that the constitutional guarantees against double jeopardy forbid.

A verdict of acquittal on the issue of guilt or innocence is, of course, absolutely final. . . .

"The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."

*Bullington,* 451 U.S. at 445, 101 S.Ct. at 1861. The values that underlie these concepts are based on the elemental principle that the "law attaches particular significance to an acquittal." *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978).

In summary, when Hudgins was acquitted following the trial of the robbery involving the bicycle, he was necessarily acquitted of petit larceny of the bicycle. *Brown,* 432 U.S. at 168, 97 S.Ct. at 2226. *Myers v. Commonwealth,* 148 Va. 725, 729–30, 138 S.E. 483, 484 (1927). The Commonwealth could not later prosecute him for larceny, whether grand or petit, of the same bicycle after he was acquitted of the petit larceny in the first trial. "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown,* 432 U.S. at 169, 97 S.Ct. at 2227. Indeed, the policy behind the Double Jeopardy Clause "protects the accused from attempts to relitigate the facts underlying a prior acquittal." *Id.* at 165, 97 S.Ct. at 2225.

Accordingly, I join in the majority opinion and would reverse the conviction.

COLEMAN, Senior Judge, dissenting.

The majority holds appellant's previous acquittal on a robbery indictment was effectually an acquittal of the lesser-included offense of petit larceny. Therefore, the majority reasons, because the acquittal necessarily found him not guilty of petit larceny, the collateral estoppel protections of the Double Jeopardy Clause barred the subsequent attempt to convict him for grand larceny from the person of the same property. I, too, believe the subsequent prosecution was barred by double jeopardy protectives. However, in my opinion, appellant's conviction for grand larceny from the person should be reversed because that crime is a lesser-included offense of the robbery charge for which he was acquitted in the prior trial and would be barred under a *Blockburger* analysis and not on the basis of collateral estoppel. See my dissenting opinion in *Graves v. Commonwealth,* 21 Va.App. 161, 167, 462 S.E.2d 902, 905 (1995), *aff'd on reh'g en banc,* 22 Va.App. 262, 468 S.E.2d 710 (1996). Nevertheless, I am bound by the doctrine of *stare decisis, see Commonwealth v. Burns,* 240 Va. 171, 174, 395 S.E.2d 456, 457 (1990), and I believe that the majority opinion in *Graves* allows the appellant to be subsequently tried for an offense which is not lesser included

as part of the charged offense. Therefore, I vote to affirm appellant's conviction.

The majority's reliance on a collateral estoppel analysis is, in my opinion, misplaced. Collateral estoppel, in the context of the Double Jeopardy Clause, is a doctrine of fact preclusion. *See Simon v. Commonwealth*, 220 Va. 412, 415, 258 S.E.2d 567, 569 (1979). The doctrine precludes the government in a second proceeding from proving a fact that it was necessarily required to prove in the prior proceeding but failed to prove, or from disproving a fact that was necessarily proved in the prior proceeding. *Id.* at 416, 258 S.E.2d at 570 ("[I]n a subsequent prosecution for an offense arising out of the same transaction, collateral estoppel bars a state's relitigation of facts that have been decided in the defendant's favor in the prior trial. . . ."). Although the majority asserts that appellant's acquittal on the robbery charge necessarily operated as a factual finding that appellant did not commit petit larceny (which they acknowledge is a lesser-included offense of robbery), the trial court specifically found only that the evidence failed to establish the element of force necessary for robbery. "[I]n order to *bar a subsequent prosecution* for a different offense arising out of the same transaction, a necessary element of the offense in the second trial must have been clearly adjudicated in the earlier proceeding." *Id.* at 415, 258 S.E.2d at 570. In the prior robbery proceeding, the trial court made no factual finding nor did the general acquittal necessarily make a factual finding that would preclude the Commonwealth from proving the facts essential to establish the elements of grand larceny from the person. Thus, I reject the majority's collateral estoppel analysis.

Were it not for our holding in *Graves* that grand larceny from the person is not a lesser-included offense of robbery, I would hold here that the second prosecution of Hudgins was barred by the robbery acquittal under a *Blockburger* analysis. I continue to believe that larceny from the person is a lesser-included offense of robbery, and I find widespread support for my view from the many jurisdictions that have considered the issue. *See, e.g., Ramsey v. State*, 441 So.2d 1065, 1067 (Ala.

Crim.App.1983) (" '[R]obbery [is] . . . composed of the crime of larceny from the person with the aggravation of force, actual or constructive, used in the taking.' " (quoting 67 Am.Jur.2d *Robbery* § 7 (1973))); *People v. Patton,* 76 Ill.2d 45, 27 Ill.Dec. 766, 389 N.E.2d 1174, 1176 (1979) ("In distinguishing between private stealing from the person of another and robbery, . . . 'where it appeared that the article was taken without any sensible or material violence to the person . . . rather by sleight of hand and adroitness than by open violence, and without any struggle on his part,—it is merely larceny from the person.' " (quoting *Hall v. People,* 171 Ill. 540, 542–43, 49 N.E. 495 (Ill.1898))); *State v. Habhab,* 209 N.W.2d 73, 74 (Iowa 1973) ("Larceny from the person . . . is an offense included within robbery. . . ."); *State v. Long,* 234 Kan. 580, 675 P.2d 832, 841 (1984) ("[T]he Crime of [larceny] is an included crime of robbery as a 'lesser degree of the same crime.' "), *overruled in part on other grounds, State v. Keeler,* 238 Kan. 356, 710 P.2d 1279, 1287 (1985); *Commonwealth v. Varney,* 690 S.W.2d 758, 759 (Ky.1985) (" 'Robbery is a combination of two other crimes (theft and assault) and has been typically defined as "larceny from the person by violence or intimidation." ' " (quoting Commentary to Kansas Penal Code, "KRS Chapter 515, Robbery")); *Commonwealth v. Ahart,* 37 Mass.App.Ct. 565, 641 N.E.2d 127, 131 (1994) ("[I]t is settled law that larceny from the person is a lesser included offense of unarmed robbery. . . ."); *State v. Harrison,* 149 N.J.Super. 220, 373 A.2d 680, 683 (App.Div.1977) ("Larceny from the person . . . [is a] lesser included offense[ ] of the crime of robbery."); *State v. Pickard,* 143 N.C.App. 485, 547 S.E.2d 102, 106 (2001) ("Larceny from the person has been consistently recognized as a lesser included offense of common law robbery."); *Johnson v. State,* 531 S.W.2d 558, 559 (Tenn.1975) (holding accused was entitled to instruction on larceny from the person as a lesser-included offense of robbery); *Moore v. State,* 55 Wis.2d 1, 197 N.W.2d 820, 823 (1972) ("[L]arceny from the person is a lesser included crime [of robbery]."); *cf. State v. Wright,* 246 Conn. 132, 716 A.2d 870, 876 (1998) ("[S]imple robbery and larceny from the person constitute two separate and distinct crimes. . . . [A] defendant who has com-

mitted acts satisfying the elements of both crimes could be convicted of and sentenced for both offenses, without violating the constitutional prohibition against double jeopardy.").

Nevertheless, we held in *Graves,* that grand larceny from the person is not a lesser-included offense charged in a robbery indictment. It follows from *Graves* therefore, that from a *Blockburger* double jeopardy analysis, appellant's robbery acquittal did not bar a subsequent prosecution of him for grand larceny from the person. "It is the identity of the offense, *and not the act,* which is referred to in the constitutional guaranty against double jeopardy." *Epps v. Commonwealth,* 216 Va. 150, 153–54, 216 S.E.2d 64, 67 (1975) (emphasis added). Thus, because we found in *Graves* that grand larceny from the person is a separate offense from robbery and not lesser included, I believe we must now hold that the trial court did not err by allowing the subsequent prosecution for larceny from the person following Hudgins' robbery acquittal.

While I am constrained by *Graves* to vote to affirm this conviction, this Court sitting *en banc* would not be so limited. In my view justice would be served by holding that double jeopardy guarantees bar Hudgins' conviction for larceny from the person after he was acquitted of robbery, but in light of the *Graves* decision, I must vote to affirm the conviction.